All right, Ms. Stetson. Whenever you're ready. Good morning, Your Honors, and may it please the Court. My name is Kate Stetson. I represent the appellant Carnival Corporation. This case is a difficult case in many ways, but the legal issues it presents are familiar ones of civil procedure, evidence, and damages. For our argument time, I'd like to begin with the partial summary judgment, because in our view there are three different paths to a remand for a new trial based on the erroneous grant of partial summary judgment. I want to start with the fact that the Court, in our view, improperly granted that partial summary judgment based on what the magistrate judge at the time described as the plaintiff's undisputed recollection. May I stop you for a second? I just want to confirm. So my understanding of what transpired is that after the partial summary judgment was granted, the jury was instructed that the false imprisonment had occurred. They were not allowed to be fact-finders as to whether or not there was a false imprisonment. That is correct, Judge Lagoa. That was because even after you moved for reconsideration, the district court judge did not alter the original ruling, summary judgment ruling. That's correct. Yes, that's in our view almost the third opportunity to correct the partial summary judgment. That happened at trial. You can continue. Okay. But maybe just to start from the beginning and work our way through to trial, the first opportunity, I think, came at the actual summary judgment briefing, because what the magistrate judge concluded was, and this is at docket entry 151, page 10, was that the plaintiff's undisputed recollection in her deposition established the elements necessary for that false imprisonment claim. We can talk on the other two prongs of this challenge about that question about disputed, but here I want to focus on recollection, because what the magistrate judge cited to for that proposition was nothing. The reason is that when you look at the plaintiff's deposition testimony, and you can find this at docket entry 95, it's exhibit one, you want to look at pages 95 and 126 in particular, because the plaintiff was asked a series of questions, and each of them she said, I don't recall or I don't remember. I don't remember whether he locked the door. I don't recall attempting to leave. I don't recall him stopping me from leaving. Those undisputed answers, the do not recalls, pose what this court in Tippett's called the failure of memory problem. When you have that kind of failure of memory during discovery, what the court called variations in testimony, a failure in memory, it creates, and I'm quoting now, an issue of credibility as to which part of the testimony should be given the greatest weight if it's credited at all. Issues concerning the credibility of the witnesses and weight of the evidence are questions of fact which require the trier of fact to decide. We talk about- Can I ask you a quick question? I guess I think I agree with you that her deposition testimony was hazy, but wasn't the affidavit pretty clear that she, although she maybe didn't remember exactly how she got in there, but once she was in there, she definitely remembered him holding the lock or standing by the lock or something like that? There's a couple of problems with that, Judge Newsom. The first is the magistrate judge makes it very clear on page 10 again, I believe, that he is relying solely on plaintiff's deposition testimony. What the plaintiff in her appeal brief does is to pivot to those two other pieces of evidence, one of them being the affidavit, which of course has some hearsay problems itself, and the other one, I think, being some triple hearsay comment from her. This is a de novo review, so we can look at the affidavit, do you not agree? You can, but I think it would be important to note that the plaintiff didn't offer arguments for why it would be admissible upon a hearsay objection below, so it would have a flavor not just of de novo review, but of brand new review. I just want to confirm that my understanding of Florida law is that you have to have the unlawful restraint of a person against their will, and that the action has to be an unlawful detention. We're not going to deal with that. Really, the issue here is whether it's against her will, and you don't have to use violence and the victim doesn't have to say, I want to leave. It's really very subjective as to whether or not they feel that they're being held against their will. I agree to a point, I think, Judge Lagoa. I think the problem here is that what we know from the deposition testimony is, and this is I think what the magistrate judge was pointing to, was that there was a point where the crew member had his hand on the door, was looking down at her, but she did not recall whether she attempted to leave, and she did not recall him stopping her from leaving. I think that's the problem with the testimony. But even beyond that, you know, so remember too, she's got the burden of proof on this claim.  So we're at summary judgment. This is the most that we've got, is this deposition testimony that has holes in it. I don't like to call it a credibility issue, because I think that runs the risk of impugning the plaintiff here. I'd prefer to call it a reliability issue. Is this or not? I thought that the motion for summary judgment, I mean, Carnival also did not present a lot of evidence to rebut her allegations in her motion for summary judgment. Well, that might be a good segue to the second issue, which is what Carnival did present was the conclusion in the FBI report. And we know under federal rule of evidence 8038, that a conclusion in a government report is presumptively admissible, as long as it's a reliable report, which of course is the plaintiff's burden to prove that it wasn't. The conclusion in the FBI report here, of course, was that this encounter was consensual. That conclusion was mentioned. The problem with the FBI report, it's sort of the same argument you made earlier. If you look at Carnival's summary judgment response, there's no, they don't explain why this report should be admissible or which part should be admissible. It's a very bare bones response. So why should we, I guess, do the work that Carnival didn't? I think there's a couple different answers. The first is that that was not by any means the only time that Carnival pointed out that this finding was admissible. If you look actually at a document that was filed even before the summary judgment response, it's a document 128 at pages one to three. This is the response to the plaintiff's motion in limine seeking to exclude that report. And there, Carnival is very clear that the reason this comes in is because it's a public records exception, same with document 153, which, of course, is the objections to the magistrate judge's R&R. I take your point that this was bare bones. I would also say there's a lot going on at this period of time. There are motions in limine, there's magistrate judge summary judgment, there's all sorts of things being briefed. So, you know, if we could all go back, I think, and edit trial court's pleadings, we probably would. But what we have here is the statement that it should come in. The response to the motion in limine predating that that explained the basis for that coming in. And of course, the district court had the opportunity with all of those documents in front of it to take that into account. Can I ask you a quick question? So in the briefs, you were emphasizing not only the FBI's conclusions, but also the declination of prosecution. It seems like in the exchange of 28 days, you've sort of given up on the latter in light of the different burden of proof that would obtain in a criminal prosecution and a civil proceeding. No, I think the latter is a tougher case to be candid. The cases that were cited in the 28 day, I noticed none of them goes past 1986. So I think I'd want to, you know, if we were to brief that further, I'd want to ask some questions about whether a 403 balancing in front of the jury is something that would be permissible. But setting all that aside, what those cases didn't talk about Judge Newsom is the other part of your question, which is the conclusion that this encounter was consensual. So even if we set away where I was headed with the declination of prosecution, quasi concession is whether the FBI findings are in any way sort of tainted in the same way because they are sort of part of the criminal process. Like are they subject to the same objection about burden of proof that the declination of prosecution is? Or do you think they're just completely different? No, I think they're completely different. And I don't think that there's anything that I've read in any of the cases that we or my friend on the other side cited, suggesting that where you have, you know, whether it's an FBI report, a police report, an EEOC report, an OSHA report, those are the types of reports in our cases that somehow the inquiry gets tainted or slides depending on the burden of proof. If this had come in, of course, at summary judgment, we usually don't worry about a 403 balancing. That's really a question of protecting the jury from unfair prejudice and unfair reaction. So at summary judgment, I think this presumptively should have come in. I see no reason in this record why it shouldn't. What you see from my friend on the other side's brief is suggestions that maybe this report wasn't as thorough as it should have been. Maybe this person wasn't experienced and so forth. All of those, as this court. Under the public records exception, I mean, there's factors you consider, including timing, which obviously here there's not an issue because it happened right after she testified that she had experience in these in investigating these kinds of cases. So I guess the question I have, though, is. The determination that the encounter was consensual, is that truly a fact as opposed to just a legal conclusion? It is truly a fact we cite at least two cases in our reply brief that stand for that proposition, and I don't see the plaintiff coming forward with any cases that suggest the contrary. If you think of it in terms of how would I be reviewing that finding if I were sitting, sitting as an appellate judge reviewing that finding, you would be reviewing it for clear and convincing evidence. That is that is quintessentially a finding of fact. And of course, under Beach Aircraft, even if it's just an opinion, that too gets admitted under 8038. I've touched on each of those first two partial summary judgment issues. Let me make one point about the last, which is when at trial, Judge Lagoa, to your first question, the district court had this opportunity after the FBI notes were admitted to go back and reconsider summary judgment before plaintiff had closed her case. What she said was, I'm not going to do that because of prejudice. First of all, there's no prejudice exception to summary judgment. Something is either disputed, which the district court repeatedly acknowledged it was, or it's not. And second, even if there was some prejudice component, the district court never explained why. She herself pointed out that because the plaintiff had not closed her case, plaintiff could have taken steps to bring all of the evidence necessary. So what what did take Carnival so doggone long to make the argument that you're now making about this? Judge Newsom, it's a fair question. I'll say this at the point where the parties are. And remember, it's a ten ring circus stipulating to admission of exhibits and so forth. As we say in our reply brief, that's just that's just a line in the docket at that point. It was the the notes were admitted into evidence on Wednesday morning of trial, but they were part of kind of a package admission that happened that morning. It was not until four thirty four p.m. on the Friday of trial that those notes actually were put in front of a witness, the witness being the plaintiff herself. The court adjourned at five forty five. As we know from briefing, plaintiff's counsel celebrated the Sabbath. Sundown was about six thirty that day. I checked. So at Sunday morning after the Sabbath was when the motion for reconsideration was filed. I grant you that again, like Judge Kidd's question, if the parties could go back, I think and change the way they brief something or when they brief something, they would have. But here, where you have the evidence coming in on a Wednesday being put in front of the plaintiff on a Friday and the motion being made on a Sunday, I don't think there's the timing issue. I'm sorry, but I mean, I clearly the district court judge was concerned that. The facts now were. Not so clear once that exhibit was introduced. Yes, she says, in fact, I don't know how you could get more diametrically opposed than this. Yeah. And that that that I think is the is the pivot point in the trial. It's almost the last clear chance in a way. You have the the the uncomfortable, you know, sort of limited recollection. And I know my time is over. If I can just finish this one thought, the limited recollection. Then you have the problem with not admitting the conclusion in the FBI reports. But then you have this chance to go back and kind of reset at trial. And the reset is let's pull back the summary judgment motion and have this trial on the false imprisonment. Because, of course, standing was that at the time that that had occurred, had she entered the written order yet on granting the partial summary judgment? She had. Yes. At trial. Yes. And of course, I don't hear the plaintiff contesting that at the point where a jury is told this person was held against her will. We've already found that it's not a surprise that they found that she was touched against her will. If there are no further questions. Very well. Thank you. You've got three minutes of rebuttal time remaining. Mr. Parrish, let's hear from you. May it please the court. Philip Parrish on behalf of the appellee Jane Doe, seated to my right, co-counsel Daniel Courtney. Judge LaGore, the reason that the jury was not allowed to act as a fact finder is that Carnival didn't permit them to act as a fact finder. And here's why. Carnival had a year to point out to the court that the, as we've heard this morning, diametrically opposed testimony was going to come into the record. The first stipulation is the exact day of the filing of the objections to the report and recommendation of Magistrate Judge Torres. Yet there is no reference to this. There's no reference to it in the written. Mr. Parrish, that's not true. The objections to report and recommendation from Carnival contest the fact that the 302 should be coming in as a public records exception. Oh, absolutely. And I didn't mean to suggest otherwise. My point is that they did not argue that regardless of whether you're going to reconsider, remember reconsideration and objections are rarely, rarely granted, especially when you file such a perfunctory response and don't even mention, you rely on some evidence, but don't even say it hits a, it meets an exception to hearsay so that the opposing counsel can, can, you know, make the argument that it's untrustworthy. But we have six, seven opportunities before the last day of trial, which is when this was raised. It's raised Sunday at 1 o'clock in the afternoon, right before the last day of trial. Closing arguments start roughly 24 hours later at 1 o'clock or 1.30 on Monday. So the first one is the objections to the report and recommendation. It sure would be easy to say, you know, we've stipulated to this now. It's going to come in. Judge, maybe, you know, Judge Williams, you should probably reconsider this. The second time is after the court, Judge Williams doesn't issue her written order denying the objections until May of 2022. This case was tried in mid to late July of 2022. They filed that motion to reconsider. Again, they're, they're, they're about to, they've stipulated this in. They're planning to utilize it at trial. Almost more important than this, on June 15th, the parties are before the court on various motions. And the court, at that point, the court says in no uncertain terms that, that the, the conclusions are, they're, they're, they're unfairly prejudicial. They have little to no probative value because of the difference in the standard that the FBI and the prosecutor have been looking at. So, Carnival's counsel stands up, this is at tab 3, DE 315 tab B, page 10, and says, we've now stipulated that Freddie Angara's statement, the handwritten statement where he says he lied, I'm sorry I lied. And the FBI notes, the handwritten FBI notes where the FBI agent, you know, charts his different lies, moving, but, but nevertheless finds them to be, to be credible. And they say this alters the hearsay analysis. Oh, okay. So now we're going to hear that you've got to revisit the summary judgment. No, they're, they say it alters the hearsay analysis and therefore it's more important for us to get in these two conclusions. Again, that, that was a, you know, they're admitting that the stipulation has an effect and should cause the judge to reconsider rulings. They just don't go for the right ruling. The, the, the difficulty it seems to me with this, with this argument on both sides is that, I guess I kind of grant you all of the procedural equity. Like it does seem, frankly, like Carnival was either asleep at the switch or was engaged in strategy or whatever. But in terms of just like substantial justice, like is there, or is there not? A genuine issue of material fact. Do you deny that there is in light of that evidence coming in? No, in light, in light of the evidence coming in with it, with him, which he's saying, no, she asked me to take her there and, and I never held, closed the door. And I, I mean, it's like now it's he said, he said, she said, right. But so, but so if this were a standalone argument, okay. If you're going to, if you're going to reverse that summary judgment, they get a new trial on that element. But the only way to tie it into this judgment is to say that it affected the trial. And that's where we have to, we cannot. But this is, but the problem is, Mr. Parrish, is that this is a, you have two separate things. You have a motion for partial summary judgment, right? And this motion for partial summary judgment is an interlocutory order. So they can't appeal, right? So you got to take your chances now. You're taking your chances at trial because this is an interlocutory order. Okay. And if it's wrong, it's a do over. So the question becomes, is the district court judge incorrect on the ruling that was made in the motion for summary judgment? And the problem is, is that once this exhibit comes in, it's clear now that there's a genuine issue of material fact. Is there not? Even the district court judge acknowledged that. On the issue of whether she went willingly into the closet. But, but, but still we have a sub-issue of whether once, because you could, you could willingly go into the closet and the, the, the ruling from, and I don't, I want to get back to the why, why it's not an incorrect rule and it would have to be an abuse of the judge's discretion. No, this is a, this is de novo review now. If it's a motion for partial summary judgment, this is the problem is that here we have a situation where you have a motion for partial summary judgment and that's de novo review. And the district court judge, even though she, you know, decided she thought she was going to change her mind and she made a little alteration in the jury instruction, she did not allow the finders of fact to make the determination as to whether or not there was a claim for false imprisonment. She made that decision for them. No, Carnival did, Your Honor, respectfully. And we're not here, there is a, there is a tool in the toolbox for interlocutory rules and it's rule 54, asking for reconsideration on rule 54. And this court's decision in Hornady, which actually came out after Judge Williams made her rulings in this case, she followed it to a tee. It, it, Hornady says. They have appellate rights, okay? They have the right to appeal an interlocutory order and they can only appeal an interlocutory order. It's that motion for partial summary judgment is not a final appealable order. It is now a final appealable order. And that's why we're here. Well, we're here for a lot more reasons than that, but if we want to reverse and give them a chance to retry that case, that's one thing that's separate and apart from rule 54 says, if you have, if you want to complain about an interlocutory order, it gives you the right to ask for reconsideration. And they had a year to raise this specific issue and they didn't. And let me, let me get back to, again, then an opening statement. Carnival throws Mr. Ungar's statement up on the Elmo and starts to read from it and then also tells the jury improperly that the FBI conclusions are, you know, they'll have to weigh plaintiff's statements against the FBI's conclusions. Then they, Wednesday morning of trial, they move it into evidence, still nothing. Then Thursday, they referenced the summary judgment during a sidebar during Lance Foster's testimony. And then Thursday evening, there's a jury charge conference on the very instruction, because there was an alteration made to it by plaintiff's counsel and Carnival says, that's fine. They have the right under rule 54 at any time to ask for reconsideration if there's a basis for it. They had a basis for an entire year. Judge McBride, which we also did a 28-J on, you held for the, writing for the court that a plaintiff's counsel's, against Carnival, delay of one day in, in, in objecting to the introduction of a deposition. That was a very different case that involved, uh, designations for a deposition where Judge Gales went and spent hours going through the designations with both sides and the plaintiff never once during those designations said he was going to object. We have a year of judicial effort. And Hornady says, one of the reasons that, that the, the, the scope narrows and the discretion grows, the longer the, the ruling, uh, exists, the ruling that you're complaining about exists and you don't raise an issue about it. Um, Can I, can I ask you a question? It seems like we've now spent, uh, eight minutes talking about Ms. Stetson's tertiary argument. Right? She said, when she stood up, she said, I've got three arguments, recollection, FBI notes, and then this motion for reconsideration thing. We've been spending all of our time on the motion for reconsideration. I understand sort of tactically because Carnival's got some stink on it for having waited so long to make the argument, but what about say her primary and secondary arguments? And for, for my purposes, can we start with the FBI notes? Like why isn't that, back to something Judge Lagoa asked earlier, why isn't that an exception of, you know, as a public investigation? Because, well, because they're not trustworthy. And why is that? Timing's good, expertise. So timing is actually, in this case, ironically bad because it happens too soon and it's too cursory. She, she, what's like the sweet spot? What's the, what's the golden box? So, so the, she apparently doesn't know that, uh, there was body worn camera. She would have investigated that, as she said, when she testified at trial. Um, she doesn't apparently have any information. She says she talked to the doc, the Carnival's doctor, but there's nowhere in her notes or in the report. And the, the medical records in Carnival's own corporate rep and their medical records reveal that two hours after this rape, Jane Doe is still so drunk. They have, they can't take a statement from her at that point. This is at 3.30. She arrives, the nurse notes that she smells of alcohol from her body. Yet, yet the FBI agent believes and credits Freddie Ungar's statement that I didn't think she was, had been drinking at all. The first things that, that, that the plaintiff told... But the district court judge did not make any findings or any rulings or determinations on the factors of untrustworthiness. Right. Well, we're here as the appellee and we get to raise right for the wrong reason or right for any reason that appears in the record. Again, they filed a perfunctory response to the summary judgment. Never mentioned, uh, rule 803. If they had, then we, we could have, uh, responded with an argument on that. Again, they don't, then they don't, uh, then they, um, go further and they, then they, they fail for an entire year, uh, to bring up that the landscape has changed and McBride, Your Honor, you said one day is too late, one day. And there, there was certainly no prejudice to the trial court other than having spent some time that afternoon. I mean, in the, in their, the objections that they filed, they talk about how it's your burden to show that the reports are, lack trustworthiness. So, I mean, they do raise that. Well, they, they did finally raise it then. Now, now, so then... I mean, but it's your burden to show that they're not trustworthy. How did you show that? Well, we, we've, we can show it. We've shown it in the briefs, the records, the... How did you show it to the magistrate judge to say that they, he should not, you know, take into account the 302s? Well, we didn't, but, but the magistrate judge ruled, relied on this court's decision in Mazur, which relies on Miller v. Field, which Carnival relies on significantly, but actually supports our position, you, the, the hearsay exception credits factual observations of the investigating officer. It doesn't credit what they take away from third party hearsay. Miller v. Field is, is very clear on that, that we're, that, you know, when you have somebody who has a dog in the fight, like Freddie Angara, they're, you're relying on their testimony and, and again, getting back to the drinking, the officer, the, the agent completely ignored that the fact that the first things out of our client's mouth were, I went to dinner and I began drinking heavily then, we have records of nine or 10 drinks that she remembers having. And, and, and the records unequivocally show that, that she's drunk two hours later. That's why she can't remember. This isn't a, oh, I'm, they, they were accused of having a convenient memory below. This is the most inconvenient memory I've ever seen. They're complaining that she couldn't remember things that even support a false imprisonment. She had, she lacked the capacity. And any FBI agent worth their salt looking at this, they didn't, she didn't ask how many drinks did you have? She didn't ask. But she wrote, she started drinking, started drinking heavily. And that's in her notes. Right. And then she ignores that. That's, that goes to capacity. She was asked at trial, at trial, because the plaintiff told her, I don't remember if he penetrated me. She had, her client had to ask the FBI agent, did he penetrate me? And the FBI agent said, yes, he did. He admitted to that. And then when she was asked about that at trial, she said, she was asked, wouldn't somebody who has had sex, been penetrated, typically know about that? And her response was, well, yes, that's, that's basically what the definition of consent is. Her own testimony, eventually at trial, undercut what she was saying. She, she never once addressed capacity consent. She went straight to, well, I've got a witness who she described at trial as being uncooperative, who, you know, was bleeding vaginally, hadn't slept for 24 hours. But the issue here is not, you know, capacity to consent. The issue here is false imprisonment and whether or not someone was. Well, whether that had a substantial effect on the trial of this case, which was a sexual assault case and which Carnival's counsel said in closing argument, the sole issue for you to decide here is whether she was too drunk to consent. If she's too drunk to consent to sexual, she's definitely too drunk to consent to, to, to a, to, to being in the closet for a period of time when she does remember looking at the, at the door being closed and she remembers being frightened and, and, and then you have Amanda's statement, it wasn't an affidavit, but a statement that she came back and told me that he locked, he kept her in the, in the closet. So the, the magistrate judge did have sufficient evidence. But let, let's, let's just say that the magistrate judge was wrong. The, where we got to on the morning of closing arguments and the motion they filed that Sunday, and they're going to get up here and say, well, until, you know, it wasn't really brought out until Friday. That's not true. As we've, as we've pointed out, but even then that, that argument was rejected by Your Honor and McBride saying, well, there was no, you don't object to the whole deposition until they actually moved to introduce it. And, and, and, and this court held in McBride, no, no, no. You, you had opportunity the day before. We, here, Carnival had opportunity for the year before and numerous, numerous, numerous opportunities, Hornady says that as we, as you get further away from the original, let's, let's stipulate for, for a moment, for argument's sake, that it's a wrong decision. Again, the issue here, at least from, I'm only speaking for myself, Mr. Parrish, is that it's not just about the trial. It's also about a motion for some partial summary judgment that was granted prior to trial. And the question is whether or not that ruling in and of itself was error. Because we have to look at that as a de novo review. And is there enough there in order to make that determination that there was false imprisonment? I believe that there is enough to, to make it a finding of false imprisonment. But even if you don't, even if you don't, the, the case doesn't stop there. Again, if that's all we had and, and, and the court found that, that, that was improperly entered, you would then send them back for a new trial on false imprisonment. We're here to talk about what happened at trial and whether it affected their substantial rights. And if so, whose fault is that? It's Carnival's fault. Carnival's fault. They had the key to unlock that ruling in their possession for a year. And it wasn't until after our client testified and, and ruined their case. They were in tatters over the weekend looking for something to, to salvage this case and they decided to file this motion on the Sunday afternoon. It gets argued that money, you cannot fault the district court and find that she abused her considerable discretion. That's the language used in Hornady. Her considerable discretion on Rule 54 brought up this many times. Look at the post-trial hearings. She kept asking, why, why didn't you bring it up sooner? What, what, don't blame the court, blame Carnival. Okay. Very well. Thank you so much, Mr. Parrish. We appreciate your presentation. Ms. Stetson, you've got three minutes remaining. Thank you, Your Honors. Judge Lagoa, you're of course correct that we're here not on an abuse of discretion review. This partial summary judgment has taken a number of twists and turns through the trial, but at bottom, the questions are the three that I started with, the opportunity the magistrate judge had in the first instance to say this evidence at deposition is not enough to support a partial summary judgment on this claim on which plaintiff bears the burden of proof. The second opportunity of course, is the Rule 8038 issue. Judge Newsome, you correctly pointed out, I think we spent about 30 seconds on that first argument, about four minutes on argument two and the rest of the time on argument three, but argument two, which is the 8038 issue is I think the, the legal crux of this summary judgment, because even if you grant or, or invest some more certainty into that plaintiff deposition that is really there, then the question is, what was the justification for not bringing in at least the conclusion from that FBI report? And what you've heard Mr. Parrish say is that in his view, that report isn't trustworthy. I'd refer this court to its decision in the Crawford case, because Crawford actually has a good discussion of what this means in the 8038 context. Government reports it says are presumptively reliable. The whole Rule 8038 is premised on the assumption that a public official under a public duty is going to do her job. So when we talk about trustworthiness, what I heard from Mr. Parrish are suggestions that maybe the conclusion could have been cross-examined on an oral argument, could have been impugned by the other side. All of that is possible, but of course the trial judge did not give Carnival the opportunity to put in the evidence and to have it spotlighted on cross-examination as Mr. Parrish. Can I ask you a question quickly as to the expert? My understanding is that you were not allowed to cross-examine the plaintiff's expert regarding the 302 report, even though they relied on the 302 report. That is correct. I think there were two different experts. One of them had to do with security and isn't as much an issue here. The other one, Dr. Surloff, says that she relied on FBI documents. And in fact, I think her report includes verbatim quotes from the FBI report. They say it's the notes, but the notes do not have a thing regarding the consensuality or the consensual nature. That's only in the 302. Yeah, exactly. So I think for each or any of these reasons, this case has to go back. And Judge Lagoa, you used the word a do-over. I want to make clear that we are not asking for the court to reverse and for that to be the end of this case. This is for a new trial, and we think one is warranted here. Very well. No further questions. Thank you. Thank you so much. That case is submitted. We'll move to case number three.